# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5970 | DATE | 9/9/2003 |
| CASE TITLE | KIMBERLY A. RICHARDSON vs. PEPSI-COLA GENERAL BOTTLERS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants defendant's motion for summary judgment [19-1] is granted. This case is hereby terminated. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 1 1 2003 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| ✓ | Mail AO 450 form. | | | 50 |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| CG | courtroom deputy's initials | 03 SEP 10 AM 10:59 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY A. RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Judge Ronald A. Guzmán |
| v. ) | |
| ) | 02 CV 5970 |
| PEPSI-COLA GENERAL BOTTLERS, ) | |
| INC. ) | DOCKETED |
| ) | |
| Defendant. ) | SEP 1 1 2003 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly A. Richardson ("Richardson") has sued Pepsi-Cola General Bottlers, Inc. ("PCGB"), alleging that defendant and its employees harassed her on the basis of her sex ("Count I") and retaliated against her for engaging in legally protected activity ("Count II") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Defendant has moved for summary judgment on the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 56 and Local Rule ("LR") 56.1. For the reasons provided in this Memorandum Opinion and Order, the Court grants defendant's motion for summary judgment.

## FACTS

Defendant PCGB is a soft drink manufacturer and distributor. LR 56.1 Statements of Material Facts (hereinafter "Facts") ¶ 2. PCGB has facilities at West 51st Street and West 35th Street in Chicago, Illinois, as well as other locations. *Id.* Plaintiff Richardson was hired by PCGB in July 2000 as a worker in the general plant classification. *Id.* at 7, 9. After 60 days of employment with the company, Richardson became a member of the International Brotherhood of Teamsters. *Id.* at 8. With the exception of a one-week stint during which she transferred to



1

the 35th Street facility in October 2001 (*id.* at 51), Richardson worked at the company's 51st Street facility (*id.* at 7).

On June 18, 2002, PCGB terminated Richardson for missing a mandatory shift. *Id.* at 18. Richardson filed a grievance through her union and was reinstated on July 17, 2002. *Id.* at 19. After an encounter with two co-workers, Richardson resigned her employment on July 22, 2002. *Id.* at 20. That same day, Richardson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 4.

Richardson alleges that three people harassed her on the basis of her sex during the course of her employment with PCGB. *Id.* at 22. PCGB manager James Stark ("Stark") allegedly "peeked" at her on three occasions as she was working. *Id.* at 23. Plaintiff also claims that Stark told her in September 2000 "Well, this is a man's world. You need to get in where you fit in." *Id.* at 34. Plaintiff further complains that Stark required her on three or four occasions during the course of her employment to pick up major product spills without any assistance from other employees (*id.* at 35); once in 2001 required her to retrieve a propane tank from beneath a trailer in the dock area (*id.* at 39); and on numerous occasions in 2001 and 2002 required her to clean up outside the facility by sweeping up cans and cigarette butts in the dock area (*id.* at 42).

Richardson further complains that supervisor Phil Weigand ("Weigand") denied her timely breaks on two occasions in 2001 (*id.* at 47), and Dwayne Hudson ("Hudson"), manager at the 35th Street facility told three male employees, outside of plaintiff's presence, that he did not want any women working in the warehouse (*id.* at 51-52).

Richardson alleges that three people retaliated against her during the course of her employment with PCGB for engaging in legally protected activity. *Id.* at 55. First, plaintiff

2

claims that Stark increased her cleanup assignments and instructed Richardson to mop the floors in retaliation for her complaints to management about his behavior. *Id.* Second, plaintiff alleges that she signed an affidavit in support of a former PCGB employee for his use in a lawsuit against PCGB (*Id.* at 56), and that PCGB employees Jimmy Hunt ("Hunt") and Lionel Goodwin ("Goodwin") confronted her separately and asked her whether she had signed the affidavit (*Id.* at 66, 71). After these encounters, Richardson called her fiancé to tell him what had happened. *Id.* at 75. Later that day, Richardson went to Stark's office, turned in her ID card, told him that "Lionel had harassed me" and "I'm not going to tolerate this bullshit no more," then left the facility, as Stark called after her to come back so he could talk to her in more detail. *Id.* at 78-80.

## DISCUSSION

Summary judgment pursuant to Rule 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). There is no "genuine issue of material fact" where the whole of the record could not persuade a reasonable fact-finder to agree with the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### Count I: Hostile Work Environment

Title VII of the Civil Rights Act of 1964 states that employers may not "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's... sex." 42 U.S.C. § 2000e-2(a)(1). Among the objectives of this statute is preventing disparate treatment of men and women in the workplace,

3

which includes protecting individuals from work environments that are discriminatorily hostile or abusive. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). Importantly, however, "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Id.* at 67. Rather, a hostile work environment claim actionable under Title VII requires a plaintiff to show that she was subjected to unwelcome conduct on account of her sex that was so *severe and pervasive as to alter the conditions of her employment* and create a hostile working environment. *Hilt-Dyson v. City of Chicago*, 282 F.2d 456, 462-63 (7th Cir.2002) (emphasis added). The plaintiff must show that the work environment was both objectively and subjectively hostile. *Harris v. Forklift Sys.*, 510 U.S. 17, 21-22 (1993).

Richardson alleges that PCGB manager Stark "peeked" at her on three occasions as she was working. Facts ¶ 23. The first peeking incident occurred in September 2000 when plaintiff was sorting product, sensed someone looking at her, and then saw Stark looking at her through a stack of pallets. *Id.* at 24. The second peeking incident occurred in the same month when Richardson was picking up a spill, turned around, and saw Stark looking at her, at which point Stark walked away. *Id.* at 29. The final peeking incident occurred in 2001 when plaintiff was working in the production area, sensed someone was looking at her, and saw Stark looking at her, at which point Stark told her "good job" and walked away. *Id.* at 30.

It is undisputed that plaintiff has failed to raise issues of fact that the actions she complains of were based on her sex. Harassment does not have to be sexual in nature for there to be an actionable claim. *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 694 (7th Cir. 2001). Whether the harassment is sexual in nature or not, however, there is only liability if the hostility is motivated by gender. *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 808 (7th Cir. 2001). It is

4

undisputed that Stark delegated certain aspects of overseeing and examining employees' work to supervisors, and also continued to personally perform this function. Facts ¶ 104. Richardson does not know whether Stark looked at male employees in the same manner while they were working. *Id.* at 32. Richardson merely states that Stark's actions were based on her sex because she and Stark are of the opposite sex, she was standing and bending at the time of the "peeking" incidents, and she perceived him to smirk in a suggestive manner. *Id.* at 33, 90. These bare allegations are insufficient to support a claim that the actions were based on her sex, since these incidents occurred in a warehouse setting where many employees are standing and bending as managers periodically observe their work.

Plaintiff also has not raised issues of fact that the actions she complains of created an actionably hostile working environment. Plaintiff claims that she found the work environment to be subjectively hostile, and the defendant has not challenged her subjective belief. Accordingly, the Court must consider only whether the work environment was objectively hostile. An objectively hostile environment is one that a reasonable person would find hostile or abusive. *Harris,* 510 U.S. at 21. To determine whether the conduct is objectively hostile or abusive, the court must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance."[1] *Id.* at 23.

The conduct at issue here may be compared to allegations made by the plaintiff in *Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998). The plaintiff in that case alleged, among other things, that three co-workers had on separate occasions tried to make eye contact with her and stared at her breasts, and that one of these co-workers repeated this behavior on more than one occasion. *Id.* at 357-58. The district court awarded summary judgment to the defendant on this hostile environment sexual harassment claim, and the Seventh Circuit Court of Appeals affirmed, noting in particular the "lack of severity" of the harassing behaviors. *Id.* at 361. The court repeated its position that there is a "safe harbor for employers in cases in which the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex." *Id.* at 362, citing *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996).

The behavior Richardson complains of in the instant case is less severe than that complained of by Adusumilli. Obviously, Stark's "peeking" at Richardson was less overtly sexual than staring at another's breasts and more readily justified as the legitimate managerial activity of overseeing a subordinate's work performance. Stark's behavior is also alleged to have occurred less frequently. Furthermore, it is undisputed that the behavior neither consisted

---

[1] The defendant argues that some of the acts alleged by Richardson are time-barred and should not be considered in support of her claim. Richardson complains that the first discriminatory act against her occurred in September 2000. Facts ¶ 23. Richardson filed her charge of discrimination with the Equal Employment Opportunity Commission on July 22, 2002, more than 650 days later. *Id.* at 4. Defendant cites the general rule that, in Illinois, "a complainant must file a charge with the EEOC within 300 days of [an] alleged discriminatory act and failure to do so renders the charge untimely." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 396 (7th Cir. 1999). As plaintiff notes, however, an employee who endures a hostile work environment can impute liability under Title VII for acts that occurred prior to the 300-day statute of limitations, so long as an act contributing to the claim occurs within the filing period and the prior acts are shown to be part of the same actionable hostile work environment practice. Some of the behavior plaintiff complains of did occur within the filing period, so it may be argued that prior acts are part of the same actionable claim. However, because the court finds that the sum of the incidents alleged by the plaintiff do not constitute an actionable hostile work environment claim, there is no need to determine whether certain of these incidents are time-barred.

of nor implied physical threats, nor did it humiliate the plaintiff. Finally, it constituted no unreasonable interference with the employee's work performance.

Plaintiff also alleges that Stark stated to her in September 2000 "Well, this is a man's world. You need to get in where you fit in." Facts ¶ 34. This, too, is insufficient to give rise to a finding that the environment was one that a reasonable person would find hostile or abusive. "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998). The single statement, while certainly inappropriate, was not so offensive as to constitute actionable conduct.

Richardson's final allegation against Stark is related to the grievance of her June 19, 2002, termination. Richardson's grievance requested reinstatement and backpay. Facts ¶ 131. A July 15, 2002, memo prepared by Stark states "Miss Richardson offered to waive the back pay for consideration of being reinstated to her position." *Id.* at 132. Richardson contends that she never offered to waive backpay as a condition of reinstatement. *Id.* at 131. PCGB contends that the union made the request that the company reinstate Richardson without backpay, and that the company accepted. Yates Dep. at 50; Gibson Dep. at 17-18; Starks Dep at 75. Notes taken by Rene Gibson at the grievance meeting support PCGB's contention; the initials of union representative Tom Knapp are indicated next to the suggestion that Richardson be reinstated without backpay. Def. Ex. M – PCGB Document P0293. The decision to reinstate employment ultimately belonged to Joe Yates. Yates Dep. at 19. The court finds that this claim fails on the basis that Richardson does not show that the action was taken on the basis of her sex, or even that her alleged harasser, Stark, was responsible for the decision that her reinstatement should be without backpay.

7

Another component of plaintiff's hostile work environment claim is her allegation that Hudson, a manager at the 35th Street facility, told three male employees that he did not want any women working in the warehouse. Facts ¶ 52. Plaintiff was not present when the comment was made and did not personally hear it, but rather learned of the comment from a third party. *Id.* As inappropriate as such a comment may be, it cannot be said to create an objectively hostile or abusive environment. Plaintiff's claim is further weakened since "[t]he impact of 'second-hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff." *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1144 (1997). The impact is also reduced in the present case because Richardson transferred from that facility after only one week of work, pursuant to an agreement between PCGB and the plaintiff's union. Facts ¶ 53.

Finally, plaintiff alleges that Weigand, a supervisor at the 51st Street facility, denied her breaks. *Id.* at 48-49. On the first occasion, plaintiff asked Weigand about the person who was to relieve her during her break. *Id.* at 48. Weigand said, "That's all you're worried about?" then walked away. *Id.* Plaintiff later left the line and took her break. *Id.* On the second occasion, plaintiff asked Weigand where the relief person was, at which time Weigand went to look for the relief person without saying anything. *Id.* at 49. Plaintiff was later able to take her break. *Id.* In neither case did the plaintiff fail to receive her break, nor did Weigand actively interfere with her ability to take the breaks. This alleged conduct is also "too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex." *Adusumilli*, 164 F.3d at 362.

Taken as a whole, the behaviors alleged by Richardson are simply not severe or pervasive enough to support a hostile work environment claim. None of the actions alleged were physically threatening or humiliating to the plaintiff. Further, the actions alleged here occurred

infrequently and were less severe than claims rejected in prior cases. Accordingly, this court finds that the incidents cited by Richardson did not unreasonably interfere with her work performance and do not rise to the level of actionable sexual harassment.

### Count II: Retaliation

A Title VII claim of retaliation requires the following: (1) the plaintiff engages in protected activity; (2) an adverse employment action is taken against the plaintiff, and not against other similarly situated employees who did not engaged in protected activity; and (3) the plaintiff was performing her job in a satisfactory manner. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Such a claim is examined using the *McDonnell Douglas* burden shifting analysis. *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under *McDonnell Douglas*, if Richardson establishes a prima facie case of retaliation, the burden of production shifts to PCGB to "come forward with a legitimate, non-retaliatory reason for its actions." *Id.* If the defendant rebuts Richardson's prima facie case in this manner, the burden shifts back to Richardson to demonstrate that PCGB's proffered reasons for its actions were pretextual. *Id.*

*A.  Retaliation for complaints of a hostile work environment*

Plaintiff's first claim of retaliation is that she complained to supervisors and the plant manager about Stark's statements and conduct in September 2000, and Stark responded by giving her increased cleanup assignments and having her begin mopping. Facts ¶ 55.

Properly raising a complaint to management regarding alleged harassment is recognized as a protected activity. *Nielsen v. Acorn Corrugated Box Co.*, 2002 WL 1941365 at *4 (N.D. Ill. 2002). It is undisputed that defendant's own sexual harassment policy directs employees to

9

report sexually harassing behavior to "his or her supervisor or to... the Human Resources Department," so that the company may "promptly investigate and take all appropriate remedial action." Facts ¶ 111. Richardson initially claimed to have reported harassing behavior to Human Resources representative John Schutt in September 2000, but Schutt did not work at or have responsibilities for the 35th or 51st Street facilities at that time. *Id.* at 26. Richardson also claimed to have reported harassing behavior to Human Resources representative Rene Gibson in September 2000 (*id.* at 27), but Gibson was not employed by PCGB until April 2002 (*id.* at 28). Richardson subsequently claims to have raised to her complaints directly to Human Resources representative Pete LaBron in February 2001 (*id.* at 115); 51st Street Director of Operations Ken Moore in February 2001 (*id.* at 116); warehouse manager Russ Padowski in Spring 2001 (*id.* at 118); Human Resources representative John Schutt in late 2001 or early 2002 (*id.* at 121-122); Human Resources representative Rene Gibson in April 2002 (*id.* at 123); and Aerial Logistics Manager Ryan Stevenson in May 2002 (*id.* at 124). Defendant disputes that Richardson told any of these individuals of harassing behavior. While there is considerable disagreement over whether Richardson did in fact engage in the protected activity she claims, the court will assume that Richardson's complaints were properly raised for purposes of this summary judgment motion.

Following the complaints, the plaintiff claims that she suffered adverse employment actions in the form of work assignments by Stark. Specifically, she alleges that she was assigned cleaning jobs that were not part of her job description (*Id.* at 115), that she was made to sweep up cans and cigarette butts outside the facility (*id.* at 43),[2] that she was required to clean up spills by herself when other employees were not (*id.* at 35-38), and that she was once told to retrieve a

---

[2] Significantly, plaintiff complains that this job was typically assigned to a particular male employee. Facts ¶ 44. This undermines plaintiff's claim that the assignment was given to her on the basis of her sex or in retaliation for prior complaints.

10

propane tank from underneath a trailer (*id*. at 39). Richardson contends that her understanding of the position of general plant employee did not include cleanup duties such as mopping, picking up trash, picking up propane tanks, or cleaning outside the plant. *Id*. at 93. PCGB, of course, contends that these duties were part of the position. Campbell Dep. at 12; Goodwin Dep. at 50-51; Stark Dep. at 116. Whether or not these are the specific duties of the general plant employee, plaintiff cannot argue that the assignments are retaliatory when she admits that cleaning, mopping and other miscellaneous duties represented about 30 percent of her job throughout her employment, and not just following her complaints. Pl.'s Dep. at 79. While the plaintiff may have considered these duties less desirable than others to which she could be assigned, the nature and frequency of the assignments are not inappropriate to an employee in a general plant job classification and do not rise to the level of actionable harassment. Requiring an employee "to do an undesirable job" is not actionable under Title VII. *Schobert v. Illinois Dept. of Transportation*, 304 F.3d 725, 733 (7th Cir. 2002).

Richardson also fails to prove that she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. In fact, Richardson identifies no similarly situated employees who were treated differently. *Id*. at 82. Plaintiff complains that jeep drivers were sometimes, but not always, made to help her with tasks such as cleaning up spills. *Id*. at 97. Jeep drivers cannot be considered similarly situated since, as Richardson admits, those employees had a different job and job functions than employees in the general plant classification like plaintiff. *Id*. at 37. A prima facie case has not been made when, as here, the plaintiff fails to "come forth with any evidence to show that similarly situated employees, that did not complain of sexual harassment, were treated differently." Joiner v. Adecco Employment Srvcs., Inc., 2002 U.S. Dist. LEXIS 14108, at *15 (N.D. Ill. 2002).

11

The final element of a prima facie case requires that the plaintiff demonstrate she was performing her job in a satisfactory manner. In support of her performance, plaintiff offers evidence that warehouse supervisor Edgar Campbell considered Richardson's work to be good overall, and that he told Stark that plaintiff did a good job cleaning the repack area. Facts ¶ 87. It is undisputed, however, that Richardson's attendance record was not good. *Id.* at 12. Plaintiff received a written reprimand on August 1, 2001, for calling off work one hour and twenty minutes after her scheduled start time. *Id.* at 14. Plaintiff received a written reprimand on October 3, 2001, for recording 12 absences in the prior year. *Id.* at 15. Plaintiff received a three-day suspension on December 10, 2001, for excessive absences. *Id.* at 16. Plaintiff received a written reprimand on February 27, 2002, for failing to report an absence before her scheduled start time. *Id.* at 17. Plaintiff was terminated by James Stark on June 18, 2002, for violating PCGB's attendance policy for the fourth time within a year. *Id.* at 18, 128. It is also undisputed that Richardson was formally and informally disciplined on several occasions. *Id.* at 12. For example, plaintiff was counseled for talking to co-workers when she should have been working (*id.* at 13), and for leaving her work area and being unavailable when managers or supervisors were looking for her (*id.* at 13, 88). Taken as a whole, Richardson's performance record, including the period of time immediately prior to her resignation, fails to demonstrate that she was performing her job in a satisfactory manner. Further, these facts are sufficient to establish a legitimate, non-retaliatory reason for PCGB's actions, and Richardson fails to show that PCGB used these reasons as a pretext to act in retaliation for her complaints. Accordingly, the court finds that the final element of plaintiff's prima facie case of retaliation has not been met.

### B. *Retaliation for submitting an affidavit in support of another's harassment claim*

Plaintiff's second claim of retaliation alleges that co-workers Hunt and Goodwin approached her separately about an affidavit Richardson submitted in support of a former PCGB employee's claims against the company. *Id.* at 56, 66, 71. Richardson complains that as a result of these encounters she was forced to submit her resignation. *Id.* at 56, 66, 71.

Submission of an affidavit in support of a Title VII claim brought by a co-worker is a "statutorily protected expression." *Origel v. Cmty. Action Serv.*, No. 99 C 8180, 2001 U.S. Dist. LEXIS 1540, at *8 (N.D. Ill. 2001). The defendant argues that plaintiff's actions are not protected because Richardson was not employed by PCGB when her affidavit was submitted on July 3, 2002. Facts ¶ 62. (Plaintiff was terminated on June 18, 2002, for an unexcused absence and was reinstated on July 17, 2002, after a grievance through her union. Facts ¶ 62-63.) However, a plaintiff need not show that she was employed at the time a statutorily protected action was taken. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (finding that former employees have a right to sue their former employers under the retaliation provisions of Title VII). The plaintiff must only show that there was a causal link between the protected expression and the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802-04. Richardson complains that she engaged in a protected activity and that PCGB took adverse action against her on the basis of that activity. Accordingly, the court finds that the plaintiff has established the first element of a prima facie case.

With respect to the second element of the prima facie case, the Seventh Circuit recognizes that an employee may be said to suffer an adverse employment action for purposes of a retaliation claim when an employer allows her co-workers to harass her because she engaged in

13

protected activity. *Knox v. State of Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996). The Court found in a review of its own cases, however, that "in general, an employer may be responsible for co-worker actions *if it has the proper notice or knowledge of the problem.*" *Id.* (emphasis added). In this case, there was no notice. Stark asked Richardson for more details as she turned in her ID, but Richardson left the facility without telling Stark everything that had happened or providing him an opportunity to respond. Facts ¶¶ 78-81. Because PCGB was not given notice of the alleged behavior of Hunt or Goodwin before Richardson resigned her employment, the court finds that the actions of her co-workers were not an adverse employment action.

It is undisputed that Richardson resigned her employment on July 22, 2002. *Id.* at 150. Richardson claims that she was constructively discharged as a result of the alleged acts of her co-workers and that this constructive discharge constituted an adverse employment action. Constructive discharge demands that the plaintiff show "that the discrimination to which she was subjected was sufficiently serious to cause a reasonable person to quit." *Carr v. Allison Gas Turbine Div.*, 32 F.3d 1007, 1011-12 (7th Cir. 1994). "Absent extraordinary conditions. . . an employee who quits without giving [her] employer a reasonable chance to work out a problem has not been constructively discharged." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001). Even considering the allegations in the light most favorable to the plaintiff, the behavior of Hunt and Goodwin does not amount to "extraordinary conditions." Hunt allegedly spoke to her in a soft voice, made no gestures, and did not threaten or scare her. Facts ¶ 69-70. The plaintiff's description of her encounter with Goodwin is more confrontational. According to Richardson, Goodwin raised his voice (Pl.'s Dep. At 240), and he gestured and swore at her (Facts ¶¶ 72, 74). Still, plaintiff did not feel as though there was an immediate physical threat to her safety. Pl.'s Dep. at 240-241. In addition, before going to Stark's office to resign, she took

14

time to call her fiancé and her attorney, and to complete her daily report sheet. *Id.* at 245-247.

Accordingly, the court finds that the plaintiff did not suffer a constructive discharge.

### CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is hereby granted. This case is hereby terminated. This is a final and appealable order.

SO ORDERED.                    ENTERED:

 

*[signature]*

HON. RONALD A. GUZMÁN
United States Judge

DATE: __9/9__, 2003